UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

CHRISTOPHER BROWN, SR., on behalf
of himself and other similarly situated
employees,

        Plaintiff,

vs.                                CASE NO.:  18-1617 SECTION "F" 1

NHS PENNSYLVANIA, INC.

        Defendant.    /

## JOINT MOTION FOR FINAL APPORVAL OF SETLEMENT AND INCORPORATED MEMORANDUM OF LAW

    Plaintiff, CHRISTOPHER BROWN, SR., on behalf of himself and those similarly situated, including Darlene Wheeler and Diane Ferguson ("Plaintiffs"), and Defendant, NHS PENNSYLVANIA, INC[1], by and through undersigned counsel, hereby request the entry of an Order approving the parties' settlement and as grounds thereof states:

## INTRODUCTION

    Plaintiff originally filed this action on February 16, 2018 on behalf of himself and a group of similarly situated employees alleging that Defendant committed overtime violations under the Fair Labor Standards Act ("FLSA"). The parties have now settled Plaintiffs' claims on a class-wide basis for significant monetary relief of $535,000.00.  *See* Declaration of Attorney Carlos Leach attached as Exhibit A with

---

[1] On April 8, 2018, Defendant NHS Pennsylvania changed its name to Merakey Pennsylvania.  As such, Merakey Pennsylvania is the same entity as NHS Pennsylvania.

1

additional exhibits. With this motion, the Parties respectfully request that the Court grant final approval of the settlement and dismiss the case with prejudice.

## I. Factual and Procedural Background

### A. Factual Allegations

Plaintiffs alleged that NHS violated the Fair Labor Standards Act ("FLSA") by 1) failing to pay him and other similarly situated employees for time spent working while on call after regular business hours on the weekends, and 2) also failed to include bonuses in the regular rate of pay when calculating overtime pay. *See* Amended Complaint at Doc. 27-2. Defendant has denied such allegations of violation of the FLSA.

### B. Procedural History

Plaintiffs filed its Collective Action Complaint on February 26, 2018. *See* Doc. 1. Defendant filed its Answer on May 3, 2018. *See* Doc. 16. On June 25, 2018, the Court entered the Scheduling Plan which allowed the parties time to conduct discovery on the sole issue of whether this case should be conditionally certified as a collective action. *See* Doc. 24. On November 30, 2018, Plaintiffs filed its motion for conditional certification. *See* Doc. 28. On January 16, 2019, prior to the Defendant's response deadline, the parties discussed the merits of the case and decided to attempt to settle the case through mediation rather than continue to incur expenses. The parties then filed a Joint Motion for Stay to attend mediation. *See* Doc. 36. The Court granted the motion by Order on January 15, 2019. *See* Doc. 37. The parties attended mediation on February 13, 2019 and reached a settlement soon after.

On April 15, 2019, the parties filed a Joint Motion for Approval of Settlement. *See* Doc. 45. The parties explained that the proposed settlement of $535,000 would provide for notice to potential class members giving them an opportunity to join the settlement by simply executing and returning a claim form/release. *Id.* If the class member chose to join, he or she would receive a pro rata share of the settlement. If the class member did not join, or she would not be included in the settlement and their rights would not be affected. *Id.* The Court then certified a class for purposes of settlement and granted preliminary approval of the settlement. *See* Order at Doc. 49. The Order directed class counsel to disseminate the class notice and re-file the motion for approval at the conclusion of the notice period and also include calculations for each opt-in class member's pro rata share of the class settlement fund. *See* Doc. 49, page 4.

Plaintiffs' counsel administered the class notice and claims forms. *See* Ex. A,¶18. On May 3, 2019, Plaintiffs initially mailed notices to putative class members. *Id.* Subsequent thereto all counsel learned certain potentially eligible workers who were employed by Defendant for a brief period of time - a day, a week or two weeks. The parties requested an extension to mail the notices to the "additional class members." *See* Doc. 55. The Court granted the motion and the deadline for additional class members to submit the claim forms was set at July 5, 2019 and the motion to submit for court approval each class member's respective recovery was extended to July 15, 2019. *See* Doc. 56. Notices have been mailed to a total of **290** class members.

3

### C. Discovery

Prior to the settlement, the parties engaged in focused discovery before agreeing to resolve this case. Defendant deposed the named Plaintiff and two Opt-in Plaintiffs. Plaintiffs deposed Defendant's Rule 30(b)(6) witnesses who testified about the job duties, the requirements of the position, Defendant's payroll policies and practices, training and other related issues regarding the putative class members. *See* Ex. A,¶6. Plaintiffs also responded to discovery requests for the Plaintiffs. Defendant produced nearly a thousand pages of documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, production reports, emails, and memoranda. *Id.* Likewise, Plaintiffs produced hundreds of pages of documents in response to Defendant's requests. In addition, Plaintiffs interviewed several former employees regarding their duties and hours worked. *Id.*

### D. Settlement Negotiations

The Parties attended a full-day mediation to resolve the case. *Id.* at ¶7. Prior to the mediation, Defendant provided Plaintiffs with class data including dates of employment, workweeks, and hourly rates for each class member. *Id.* Plaintiffs' counsel prepared a detailed damage model for each class member. The mediation took place on February 21, 2019 and was presided over by an experienced employment law mediator, Attorney Ellis Murov. *Id.* at ¶8. Unfortunately, the parties reached an impasse at the end of the mediation. *Id.* After further

discussions, the parties finally reached a settlement after arms-length negotiations. *Id.*

## II. Summary of the Settlement Terms

### A. The Settlement Fund

NHS has agreed to pay a maximum settlement amount not to exceed five hundred thirty-five thousand dollars ($535,000.00). The settlement will cover awards to class members, Court-approved attorneys' fees and costs, as well as Court-approved service payments.

### B. Release

Potential FLSA Opt-Ins who opt in to the settlement will release all FLSA and related claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation. *See* Exh. B ¶8.

### C. Eligible Employees

The settlement class consists of Substance Abuse Specialists, Employment Specialists, Housing Specialists, Peer Support Specialists, Forensic Specialists, Registered Nurses, and Licensed Practitioner Nurses who worked for Defendant's ACT/FACT teams within the state of Louisiana and Pennsylvania within the last three years during the February 19, 2016 through February 19, 2019 time period. *Id.* at ¶B; *see also* Doc. 49, page 2.

### D. Allocation Formula

Each class member is eligible to receive a pro rata share of the settlement based on a formula representing each class members' respective hourly rate of pay

*and* the total number of weeks worked by the class member within the total weeks of the claim period between February 19, 2016 through February 19, 2019. Following the initial claim period, any unclaimed portion of the settlement funds is to be added to each respective class members who have opted in to the claim, also on a pro rata basis. No portion shall revert to the employer.

### E. Class Members' Recovery

Notice was mailed to a total of **290** putative class members. *See* Ex. A, ¶10. A total of **114** class members, including the lead Plaintiff and original two opt-in Plaintiffs, have opted into the settlement. The estimated "maximum recovery" for each class member if Plaintiffs prevailed on each issue is included in the third column of Exhibit C (Column C). The "Individual Pro Rata Share" amount pursuant to the settlement for each class member who opted into the settlement is noted in the fourth column (Column D). This represents each opt-in member's actual gross recovery. Column E notes the pro rata share after the fee has been deducted.

Per the terms of the settlement agreement, class members will receive significantly more because not all eligible class members have opted into the settlement and the balance of the settlement funds does not revert to the employer.

### F. Attorneys' Fees and Litigation Costs

Plaintiffs' counsel will receive attorney's fees and costs of one third of the class settlement, one hundred seventy-five thousand dollars, $175,000. To date, Plaintiffs'

counsel has expended in excess of 500 hours and approximately $8,400 in costs and anticipates $1,000-$2,000 in additional claim administration costs. *See* Ex. A,¶15.

### G.     Service Awards

In addition to the individual awards under the allocation formula, the Class Representative Christopher Brown and opt-in Plaintiffs Wheeler and Ferguson will receive additional payment in recognition of the services they rendered on behalf of the Potential FLSA Opt-Ins ("Service Award"). *See*. Ex. B ¶3. Plaintiff Brown will receive $5,000. Opt-in Plaintiffs Wheeler and Ferguson will receive $1,500 each.

Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation. Plaintiffs have risked being "blackballed" in the industry by being the named Plaintiffs and being the first Plaintiffs to step forward and pursue their rights to overtime. Plaintiffs and Plaintiffs' counsel communicated extensively throughout the litigation and during the settlement process. Mr. Christopher Brown continues to be the "point person" for many class members and his role in this matter was crucial to the success of settling this matter. Defendant agrees with the incentive payment and believes it to be a fair part of this settlement.

Incentive awards are not uncommon in class action cases and are within the discretion of the court. In calculating incentive fees, courts consider:

> the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course,

the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y.1997) (citing *Yap v. Sumitomo Corp. of America*, 1991 WL 29112 (S.D.N.Y.1991); *Green v. Battery Park City Auth.*, 1987 WL 11698 (S.D.N.Y.1987); *Block v. Revlon*, 1985 WL 56614, 37 Fair Empl. Cas. (BNA) 1327 (S.D.N.Y.1985); *Wire Serv. Guild v. Associated Press*, No. 78-4502, No. 790991, slip op. (S.D.N.Y.1983)).

In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. *Su v. Electronic Arts, Inc.*, 2006 WL 4792780 No. 6:05-cv-131-Orl-28JGG (M.D.Fla. 2006*); See also Roberts v. Texaco, Inc.*, 979 F. Supp. at 201 (citations omitted); *see also Women's Comm. for Equal Employment Opportunity v. National Broad. Co.*, 76 F.R.D. at 182 ("plaintiffs here ... undertook significant obligations, perhaps at some risk to job security and good will with co-workers, resulting in broad-ranging benefits to the class"); *Lepinske v. Mercedes Homes, Inc.*, 6:07-cv-915-Orl-31DAB (July 7, 2008) (Presnell, J.).

ARGUMENT

III. <u>Approval of the Settlement Is Appropriate</u>

"Because this case arises under the Fair Labor Standards Act, the Court must scrutinize the settlement for fairness before issuing its approval. This is because '[t]he provisions of the [FLSA] are mandatory, and not subject to negotiation and bargaining between employers and employees.' " *Domingue v. Sun Elec. &*

*Instrumentation, Inc.,* No. 09–682, 2010 WL 1688793, at *1 (M.D.La. Apr. 26, 2010) (Vance, J.) (quoting *Collins v. Sanderson Farms, Inc.,* 568 F.Supp.2d 714, 717 (E.D.La.2008) (Berrigan, J.)) (citing 29 U.S.C. § 201 et seq.; *Schulte v. Gangi,* 328 U.S. 108, 113 n. 8 (1946); *Lynn's Food Stores, Inc. v. United States,* 679 F .2d 1350, 1352–55 (11th Cir.1982)).

Before approving a settlement in an FLSA collective action, the court must determine whether (1) the settlement involves the resolution of a bona fide dispute over an FLSA provision and (2) the settlement is fair and reasonable. *Lynn's Food Stores,* 679 F.2d at 1352–55; *Jarrad v. S. Shipbldg. Corp.,* 163 F.2d 960, 960 (5th Cir.1947); *Domingue,* 2010 WL 1688793, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1355); *Liger v. New Orleans Hornets NBA Ltd. P'ship,* No. 05–1969, 2009 WL 2856246, at *1 (E.D.La. Aug. 28, 2009) (Berrigan, J.) (citing *Lynn's Food Stores,* 679 F.2d at 1355; *Collins,* 568 F.Supp.2d at 717; *Camp v. Progressive Corp.,* No. 01–2680, 2004 WL 2149079, at *4 (E.D.La. Sept. 23, 2004) (Wilkinson, M.J.)).

The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, ... but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Collins,* 568 F.Supp.2d at 719 (citations and footnote omitted).

Although the provisions of Fed.R.Civ.P. 23, which governs class actions, do not apply to collective actions under the FLSA, Rule 23(e) is similar in that it requires court approval before a proposed class action settlement may be finalized. A class

9

action settlement must be "fair, adequate and reasonable" and cannot be the product of collusion between the parties. *In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 179 (5th Cir.1976); *Ruiz v. McKaskle,* 724 F.2d 1149, 1152 (5th Cir.1984); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977).

In determining whether a settlement is fair, adequate and reasonable, the court should consider the following six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir.1982)); *accord Liger,* 2009 WL 2856246, at *2; *Collins,* 568 F.Supp.2d at 722.

When considering these factors, the court should keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton,* 559 F.2d at 1331; *Henderson v. Eaton,* No. 01–0138, 2002 WL 31415728, at *2 (E.D.La. Oct. 25, 2002) (Vance, J.). Moreover, the court is aware, as the parties must also be, that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995) (citing *Cotton,* 559 F.2d at 1330).

### A. A Bona fide Dispute Exists

The instant action presents bona fide disputes over FLSA provisions, including but not limited to whether the collective action members worked the overtime hours

claimed, whether the collective action members are due compensation for time spent working while on call after regular business hours on the weekend, whether bonuses should have included in the regular rate of pay when calculating overtime pay, whether liquidated damages are due, whether any violation was willful/reckless to warrant a third year in the statute of limitations. These disputed issues clearly establish a bona fide dispute.

  B.  The Settlement is Fair, Adequate and Reasonable

    1. There is no existence of fraud or collusion behind the settlement.

  The court may presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. 4 *Newberg on Class Actions* § 11.41 (4th ed.) (avail. on Westlaw without pagination; database updated Nov. 2011); *accord Liger,* 2009 WL 2856246, at *3; *Collins,* 568 F.Supp.2d at 725. While approval of a proposed settlement is discretionary, "it is clear that the court should not give rubber-stamp approval." *Newberg on Class Actions* § 11.41. There is also a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Id.* § 11.51; *accord Liger,* 2009 WL 2856246 at *3; *Collins,* 568 F.Supp.2d at 725.

  In the instant case, no evidence refutes these presumptions. The parties conducted extensive settlement discussions, including a lengthy private mediation followed by additional settlement discussions when mediation reached an impasse. Depositions were taken, voluminous discovery requests were propounded, and

thousands of pages of documents were produced. Counsel for both sides are experienced in complex litigation of this sort.

### 2. The Complexity, Expense and Likely Duration of the Litigation

The case at hand is on the higher end of complexity for FLSA cases. Indeed, there is a small amount of case law related to the issue of on-call work and whether flat fee arrangements satisfy the FLSA's overtime requirements. In addition, if the case were to proceed as a collective action, litigation expenses and the length of litigation would increase tremendously including briefing on issues such as representative discovery, motion to decertify the class, dispositive motions and additional pretrial motions. It is expected that the case would not reach a final judgment before another year and a half.

### 3. The stage of the proceedings and the amount of discovery completed.

The Complaint was filed in February 2018. The parties conducted through discovery on whether the case was suitable for collective action. At the conclusion of phase one discovery, Plaintiff filed its motion for conditional certification and the parties opted to discuss settlement rather than continue lengthy litigation. The parties exchanged ample documents to conduct thorough settlement discussions.

### 4. The probability of plaintiffs' success on the merits.

As explained, the collective action plaintiffs faced many hurdles had the litigation continued. The biggest issue for the class is proof of the hours worked. Plaintiff and the class members expected to prove that routine hours of overtime were worked weekly by the class. In reality, time sheets from the class members do not

12

reflect the same. In addition, Defendant denied the existence of any unpaid overtime hours. Further, the issues of whether liquidated damages or whether there was a willful/reckless violation of the FLSA was a wildcard. Defendant would certainly rely on the fact that it paid overtime to class members on a regular basis. Last, there is ample caselaw to support Defendant's motion for decertification of a case such as this.

### 5. The range of possible recovery.

This factor leans strongly in favor of approval. The class members will receive more than half of their estimated best scenario recoveries. For example, the average recovery a class member could have recovered had Plaintiffs prevailed on all issues for actual damages is $8,009.89. Here, the settlement will pay the class members an average payout of $4,535.09. The settlement is more than fair.

The Parties agree that the terms of settlement reflect a reasonable "give-and-take" on the major issues in dispute. Specifically, Defendant's agreement to make *any* payment to Plaintiffs reflects a significant concession (for purposes of settlement only). In furtherance of that concession, the Parties first reached a reasonable compromise with respect to the number of overtime hours worked each week by Plaintiffs and, second, ultimately agreed Plaintiffs would be compensated for each week of the claim period. Notably, this means that Plaintiffs will receive compensation under the agreement for workweeks during which they may not have worked *any* overtime hours or were paid for all hours worked, such as workweeks during which they were absent due to illness, personal reasons, vacation, or holiday, or workweeks during seasonally slow months. In short, the Parties reviewed and

assessed the potential risks of litigation with their respective counsel. The Parties agree that the negotiated terms of settlement, as summarized below, reflects a reasonable compromise of all disputed issues, and that the negotiated settlement is in the Parties' best interest. Considering the above-referenced formula, the Parties have reached a fair and reasonable agreement.

### 6. The opinions of the class counsel, class representatives, and absent class members.

The parties join in requesting approval of the settlement, which was arrived at after extensive negotiation by counsel. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Liger,* 2009 WL 2856246, at \*4 (citing *Cotton,* 559 F.2d at 1330). Although a potential conflict of interest always exists between an attorney and members of a collective action, *id.* (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir.1974); *In re Employee Benefit Plans Sec. Litig.,* No. 3–92–708, 1993 WL 330595, at \*5 (D.Minn.1993)), there is no evidence that plaintiffs' counsel have not worked in good faith to secure a reasonable compromise.

Unlike an ordinary class action, there are no absent class members in an FLSA collective action. However, Plaintiff's counsel has spoken with Plaintiff and dozens of the class members and they all have expressed content with the settlement.

### C. Attorney's Fees/Costs

Under the FLSA, the court may award reasonable attorney's fees to the prevailing party. *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir.2006). The statute provides that a court "shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Though the attorney's fee provision of the FLSA does not mention 'prevailing party,' we typically cite prevailing party fee-shifting jurisprudence in FLSA cases." *Saizan,* 448 F.3d at 799 n. 7 (citing *Tyler v. Union Oil Co.,* 304 F.3d 379, 404 (5th Cir.2002)).

Courts have applied two different methods for determining attorney fee awards in common fund cases—the percentage fee method and the lodestar method. Under the first method, the Court awards a percentage of the total fund. *See In re Prudential–Bach Energy Income Partnerships Securities Litigation,* 1994 WL 150742 (E.D.La.) (J. Livaudais). The second method requires the Court to compute the "lodestar" by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Strong v. Bellsouth Telecommunications, Inc.,* 137 F.3d 844, 850 (5th Cir.1998). The Court may then apply a multiplier to the lodestar, adjusting the lodestar either up or down. *Id.*

The Supreme Court has indicated that the percentage fee method is proper when calculating attorneys' fees where a common fund exists. *See Blum v. Stenson,* 464 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole."). The majority of circuits apply the percentage fee method—either exclusively or at the discretion of the district court—in common fund cases. *In re Catfish Antitrust*

*Litigation,* 939 F.Supp. 493, 499 (N.D.Miss.1996) (collecting cases). Moreover, numerous district courts in the Fifth Circuit have applied the percentage fee method to common fund cases. *In re Combustion, Inc.,* 968 F.Supp. 1116, 1135 (W.D.La.1997); *Catfish,* 939 F.Supp. at 500; *Prudential,* 1994 WL 150742 at *4.

In this case, all parties have agreed plaintiff's counsel is entitled to a total of 33% of the gross settlement amount for attorney's fees, costs and expenses. Contingency fee arrangements in this legal community are generally in excess of 33%, and attorney's fees and expenses are usually deducted from each plaintiff's total recovery. *See Legros v. Mud Control Equipment, Co.,* 2017 WL 925730 (W.D. La.2017); *citing Hebert v. Baker Hughes, Inc.,* 2016 WL 7029336, *4 (W.D.La.); *see also In re Bayou Sorrel Class Action*, 2006 WL 3230771 (W.D.La.). As in *Legros*, the retainer agreement between plaintiffs and class counsel provides for a contingency fee of 40% of the gross settlement amount. However, Plaintiff's counsel agreed to lower the percentage to 33% to increase the class recovery. Defendants agreed to payment of that amount as attorney's fees as part of the settlement agreement. For all of the foregoing reasons, the amount of attorney's fees agreed to by the parties in the settlement contract is fair and reasonable.

Costs other than attorneys' fees should be allowed as of course to the prevailing party unless the court otherwise directs. Fed.R.Civ.P. 54(d) and *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.,* 71 F.3d 198, 205 n. 5 (5th Cir. 1995). A party who obtains a favorable judgment on some of its claims may be regarded as a prevailing party, even if it has not sustained all of its claims. *Id.* Taxation of costs

under Rule 54(d) is within the district court's discretion. *Breaux v. City of Garland*, 205 F.3d 150, 164 (5th Cir. 2000). Although there is no "prevailing party" when a case settles, these principles indicate that plaintiffs' counsel should recover their costs expended in reaching a successful, fair and reasonable settlement in this action.

Here, Class Counsel have incurred approximately $8,400 in out-of-pocket costs prosecuting the litigation with no guarantee of success. These costs were incidental and necessary to the representation of the class and which include court reporter and deposition transcription fees, travel costs, courier fees, electronic research, mediation fees, postage, and photocopies. A large portion of the costs were also devoted to administering the class claims process. Plaintiff's counsel expects additional administration costs related to mailing settlement checks and correspondence. The parties anticipated $10,000 in costs as part of the settlement. Based on the current tally of costs and the expected additional costs included in administering the settlement funds to over 100 class members, plaintiffs' counsel will easily exceed $10,000.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Court enter an Order granting final approval of the settlement and dismissal of the case with prejudice.

Dated this 15th day of July, 2019.

BY: s/Carlos V. Leach, Esquire
Carlos V. Leach, Esquire
1950 Lee Road, Suite 213
Winter Park, FL 32789
Attorney for Plaintiffs

BY: s/Patrick G. Murphy, Esquire
Patrick G. Murphy, Esquire
Edward J. Murphy, Jr., Esquire
640 Sentry Parkway, Suite 100
Blue Bell, PA 19422
Attorney for Defendant

BY: s/Craig B. Mitchell, Esquire
Craig B. Mitchell, Esquire
Kendale J. Thompson, Esquire
615 Baronne Street, Suite 300
New Orleans, Louisiana 70113

BY: s/Derek M. Mercer, Esquire
Derek M. Mercer, Esquire LA Bar 28827
318 S. Rendon Street
New Orleans, LA 70119
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this on this 15th day of July 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send a notice of electronic filing to all parties of record.

s/ CARLOS LEACH
Carlos V. Leach, Esq.