```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

CHRISTOPHER BROWN, SR. (on                    CIVIL ACTION
behalf of himself and other
similarly situated employees),
DIANE FERGUSON, and DARLENE
WHEELER

v.                                            NO. 18-1617

NHS PENNSYLVANIA, INC.                        SECTION "F"

ORDER AND REASONS

Before the Court is the Joint Motion for Final Approval of Settlement filed by plaintiff Christopher Brown, Sr. (on behalf of himself and other similarly situated employees) and defendant NHS Pennsylvania, Inc. For the reasons that follow, the motion is GRANTED.

**Background**

Christopher Brown, Sr. filed this lawsuit on February 16, 2018, alleging that NHS Pennsylvania, Inc. failed to pay him and other similarly situated employees one-and-one-half times their regular hourly rate for all hours worked in excess of forty hours per week, in violation of the Fair Labor Standards Act. Specifically, Mr. Brown contended that NHS failed to pay for on-call hours worked on the weekends and failed to include bonuses in the regular rate of pay when calculating overtime compensation.

1

After two other NHS employees, Diane Ferguson and Darlene Wheeler, joined this action, the plaintiffs moved for conditional certification, contending that approximately 220 mental health workers of various specialties were not paid overtime as required by the FLSA.  On January 15, 2019, before the defendant's opposition was due, the parties filed a joint motion to stay, citing their efforts to resolve this matter through mediation. That same day, the Court continued all deadlines in this case for a period of 45 days and reset the submission date on the motion for conditional certification.  In the meantime, on February 26, 2019, the plaintiffs filed in the record a notice of settlement.

After confecting a written agreement, the parties jointly sought approval of the settlement and conditional certification for settlement purposes.  The parties explained that NHS had agreed to pay a maximum amount of $535,000, which would include awards to class members, attorneys' fees, a settlement administration fee, and service awards to Mr. Brown, Ms. Ferguson, and Ms. Wheeler. Each class member would be eligible to receive a pro rata share of the settlement based on a formula representing his or her hourly rate of pay and the total number of weeks worked within the claim period.  Following an initial notice period, any portion of the settlement fund unclaimed by putative class members would be added to all class members who opt-in to the settlement, and no portion would revert to the employer.

On May 3, 2019, the Court granted the motion for settlement approval, in part, certifying this case as a collective action for settlement purposes.[1]  But because each class member's recovery would depend on the number of putative members who elect to opt-in to the settlement, the Court ordered the parties to re-urge their motion for approval at the conclusion of the notice and opt-in period.

Notices were then mailed to 290 putative class members.  As of the July 15, 2019 deadline to submit opt-in forms to this Court, a total of 114 members had opted-in to the settlement, including the lead plaintiff, Mr. Brown, and the original two opt-in plaintiffs.

The parties now seek final approval of their settlement.  In support of their request, the parties offer a chart itemizing each class member's estimated maximum recovery had the plaintiffs prevailed on every disputed issue, each member's gross recovery pursuant to the settlement, and each member's pro rata share after deduction of fees.  The parties also provide the Court with

---

[1] The Court defined the collective action settlement class as follows:
> All Substance Abuse Specialists, Employment Specialists, Housing Specialists, Peer Support Specialists, Forensic Specialists, Registered Nurses, and Licensed Practitioner Nurses who worked for NHS Pennsylvania, Inc. or Merakey Pennsylvania (in light of the company's name change in April of 2018) on the ACT/FACT teams within the state of Louisiana or Pennsylvania between February 19, 2016 and February 18, 2019.

specific amounts for attorneys' fees ($174,592.35)², a settlement administration fee ($10,000), and service awards ($5,000 to Mr. Brown and $1,500 to Ms. Ferguson and Ms. Wheeler, respectively).

I.

Court approval is required for any settlement to resolve a lawsuit brought under the Fair Labor Standards Act. Istre v. Louisiana Tank Specialties, LLC., No. 14-339, 2016 WL 866709, at *1 (E.D. La. Mar. 7, 2016) (citing Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 717 (E.D. La. 2008)). "When deciding whether to approve a proposed settlement, the Court must assess whether the proposed settlement is both (1) the product of a bona fide dispute over the FLSA's provisions and (2) fair and reasonable." Id. (citing Domingue v. Sun Electric & Instrumentation, Inc., No. 09-682, 2010 WL 1688793, at *1 (E.D. La. Apr. 26, 2010)). "A key focus is to ensure that an employer does not take advantage of its employees in settling their claim for wages." Sierra v. E.M.S.P., LLC, No. 15-0179, 2015 WL 5823293, at *2 (E.D. La. Oct. 6, 2015). "While conducting the analysis, the Court must keep in mind the 'strong presumption' in favor of

---

² On July 25, 2019, the parties supplemented their motion for approval to include one additional class member, Joseph Damiens, whose consent form was post marked July 3, 2019 but mailed to the incorrect address. Instead of recalculating the recoveries for the existing 114 class members, plaintiffs' counsel agrees that Mr. Damiens' $407.65 recovery should be deducted from the $175,000 portion of the settlement fund allocated to attorneys' fees.

4

finding a settlement fair and remain aware that a settlement is a compromise, a yielding of highest hopes for certainty and resolution." Id. at *3 (quoting Collins, 568 F. Supp. 2d at 720).

### A. Bona Fide Dispute

A "bona fide dispute exists where the parties disagree on 'hours worked or compensation due' and engage in 'aggressive prosecution and strenuous defense.'" Istre, 2016 WL 866709, at *1 (quoting Akins v. Worley Catastrophe Response, LLC, No. 12-2401, 2014 WL 1456382, at *2 (E.D. La. Apr. 14, 2014)). In this case, the parties have disputed numerous issues, including whether each class member worked the overtime hours claimed, whether bonuses should have been included in the regular rate of pay when calculating overtime pay, whether liquidated damages are due, and whether the plaintiffs have sufficient evidence of "willfulness" or "recklessness" to take advantage of the three-year statute of limitations. "[S]ignificant dispute over the issue of Plaintiffs' classification, as well as other issues relating to the calculation of overtime payment" are evidence of a *bona fide* dispute. Allen v. Entergy Operations Inc., No. 11-1571, 2016 WL 614687, at *1 (E.D. La. Feb. 16, 2016). Therefore, the Court finds a *bona fide* dispute exists.

### B. Fair and Reasonable

"[T]here is a strong presumption in favor of finding a settlement fair," and the fact that a "settlement is the negotiated

5

result of an adversarial proceeding is an indication of its fairness." Domingue, 2010 WL 1688793, at *1 (internal quotations omitted). Six factors generally guide this Court's analysis of the fairness and reasonableness of an FLSA settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

Reed v. General Motors Corporation, 703 F.2d 170, 172 (5th Cir. 1983). After due consideration, the Court finds that each of these factors weighs in favor of a conclusion that the parties' settlement is fair and reasonable.

*1. The existence of fraud or collusion behind the settlement.*

"'[A]bsent evidence to the contrary, there is a presumption that no fraud or collusion occurred between counsel.'" Istre, 2016 WL 866709, at *2 (quoting Domingue, 2010 WL 1688793, at *1). There is nothing before the Court to rebut this presumption. Since this action was filed, the parties have engaged in extensive discovery; depositions were taken, voluminous discovery requests were propounded, and thousands of pages of documents were produced. The parties then participated in private mediation, after which they continued to engage in good-faith negotiations to resolve this matter amicably.

2. *The complexity, expense, & likely duration of litigation.*

This case has been pending for nearly a year and a half. Because minimal case literature pertaining to on-call work and flat-fee arrangements exists, counsel of record agree that the issues involved "are on the higher end of complexity for FLSA cases." If this case were to proceed as a collective action, litigation expenses would tremendously increase through motion practice and trial preparation. The parties seek to avoid these additional expenses through settlement.

3. *The stage of the proceedings & amount of discovery completed.*

After conducting discovery as to whether this case is suited to proceed as a collective action, the named plaintiff moved for conditional certification. The parties then elected to explore the possibility of settlement and completed additional discovery during that process. Such discovery narrowed the issues to those which are disputed.

4. *The probability of plaintiffs' success on the merits.*

Given the unresolved factual and legal disputes between the parties, it is unlikely that the plaintiffs would establish NHS's liability for 100% of the overtime pay sought. The settlement reached by the parties recognizes the respective strengths and weakness of their positions and reflects a reasonable "give-and-take" of the *bona fide* dispute between the parties.

5. *The range of possible recovery.*

The agreed-upon settlement amounts are within the range of possible recovery for the plaintiffs. The parties agree that, had the plaintiffs prevailed on all disputed issues, the average recovery per class member would have been $8,009.90. Pursuant to the settlement, each class member will receive an average payout of $4,535.09. Thus, the class members will receive approximately 57% of their estimated best-case scenario recoveries. The Court finds that this factor heavily favors approval.

6. *The opinions of counsel, representatives, & absent members.*

The only parties to this settlement are the plaintiffs and NHS. Thus, there are no "absent class members," and all class members are represented by plaintiffs' class counsel. Moreover, the parties jointly seek judicial approval of a settlement agreement which resolves a *bona fide* dispute and was negotiated in good faith. The Court finds that the final factor indicates the settlement is fair and reasonable.

### c. Service Awards

In addition to the individual awards under the allocation formula, the parties agree that Class Representative Christopher Brown and the original two opt-in plaintiffs, Diane Ferguson and Darlene Wheeler, will receive payment in recognition of the services they rendered on behalf of the potential FLSA opt-in

members. Mr. Brown will receive $5,000, while Ms. Ferguson and Ms. Wheeler will each receive $1,500.

The Court finds that these awards are reasonable, considering these plaintiffs' efforts in initiating and prosecuting this matter. These plaintiffs have communicated with plaintiffs' counsel throughout the course of this litigation and during the settlement process. Mr. Brown, in particular, has played an instrumental role in settling this matter and continues to be the "point person" for many class members. "Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation." Cook v. Flight Servs. & Sys., No. 16-15759, 2019 U.S. Dist. LEXIS 99129, at *6 (June 13, 2009) (quoting Camp v. Progressive Corp., 2004 U.S. Dist. LEXIS 19172, at *26 (E.D. La. Sept. 23, 2004)).

### d. Attorneys' Fees

Finally, NHS agrees to pay attorneys' fees to plaintiffs' counsel in the amount of $174,592.35 and a settlement administration fee of $10,000.

As part of the fairness determination, the Court must assess the reasonableness of the proposed award of attorneys' fees and expenses sought by plaintiffs' counsel. In this case, plaintiffs' counsel seeks a fee of $174,592.35 for the 500 hours they expended on this case, as well as $10,000 in expenses. Thus, counsel

requests an hourly fee of approximately $350 for the two lawyers who worked on this case.

Although this signifies the high-end of local market rates, "[c]ourts have endorsed the practice of using the [percentage of recovery] method of determining reasonableness of fees in class actions . . . to double check the fee." Collins, 568 F. Supp. 2d at 729. The fee and cost award requested by plaintiffs' counsel here amounts to 34.5% of the total settlement proceeds. A 34.5% fee is slightly higher than those normally approved by courts in this district. See, e.g., Sierra v. E.M.S.P., LLC, No. 15-0179, 2015 WL 5823293, at *5 (E.D. La. Oct. 6, 2015) ("While a 33.5% fee is on the higher end of approved contingency fees, it nonetheless falls within the range of past-approved fees[.]"); In re Prudential-Bache Energy Income P'ships Secs. Litig., 1994 U.S. Dist. LEXIS 4786, at *3 (E.D. La. Apr. 13, 1994) ("Historically, fee awards in common funds cases . . . were computed based upon a percentage of the fund, typically in the 25% to 33% range.").

Higher percentages, however, are justified in some cases. For example, in Lackey v. SDT Waste & Debris Services, LLC, another Section of this Court determined that a fee equal to 40% of the gross settlement – "a higher contingency than most courts have allowed" – was reasonable in light of "the complexity, longevity, and extensive discovery that took place." No. 11-1087, 2014 U.S. Dist. LEXIS 136181, at *8 (E.D. La. Sept. 26, 2014). Based on

these benchmarks, 34.5% of the total settlement proceeds is reasonable in this case. The Court appreciates that the plaintiffs obtained more than one half of their best-case scenario recovery and that plaintiffs' counsel expended considerable time in their representation.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the joint motion for final approval of settlement [Rec. Doc. 63], as supplemented by the July 25, 2019 notice of filing [Rec. Doc. 65], is GRANTED. The settlement is approved in its entirety, and this action is hereby DISMISSED with prejudice.

New Orleans, Louisiana, July 26, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE